1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOPHIA BRULEE, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>GEICO INSURANCE AGENCY INC., et al.,<br><br>            Defendants. | Case No.: 1:17-cv-01434 - JLT<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION<br><br>(Doc. 19) |

Plaintiffs contend Midvale Indemnity Company and Gallagher Bassett Services breached the terms of an insurance contract to provide coverage for contents stolen from the Tools N Thangs store and for damages caused during the burglary. (*See generally* Doc. 2 at 3-4) They also contend the defendants are liable for a breach of contract and the covenant of good faith and fair dealing. (*Id.* at 4-7) In addition, Sophia Brulee asserted claims for intentional infliction of emotional distress and negligent infliction of emotional distress. (*Id.* at 8-9)

Defendants Midvale Indemnity Company and Gallagher Bassett Services assert Plaintiffs are unable to succeed on several claims and seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docs. 19, 20) The Court heard the oral arguments of the parties on July 16, 2018. For the reasons set forth below, Defendants' motion is **GRANTED IN PART AND DENIED IN PART.**

*///*

1

# I. Background and Undisputed Material Facts[1]

Sophia Brulee is a principal of Tools N Thangs Inc., a corporation that operates a second-hand store located in Bakersfield, California. (PSF 1; Doc. 21-3 at 2, Brulee Decl. ¶ 1) "The store buys and sells a variety of goods including electronics, jewelry, tools, musical instruments, and other items." (*Id.*)

Ms. Brulee obtained a business owner's policy from Midvale Indemnity Company, which was identified as Policy Number BPP1004836 ("the Policy"). (JSF 1; PUF 3) Tools N Thangs was the only named insured on the Policy, which was in effect from May 24, 2016 to May 24, 2017. (DUF 1; JSF 2) The Policy premium was $1,423.00, and Plaintiff was current on all payments. (PUF 3; Doc. 21-3 at 2, Brulee Dec. ¶ 3)

The Policy Declarations page described coverage for Tools N Thangs, Inc for "Business Personal Property" in the amount of $50,000. (JSF 10; Doc. 20-4 at 3) Under the heading "Liability Coverage," the Policy Declarations provided coverage for "Business Liability" in the amount of $1,000,000 per occurrence, "Damages to Premises Rented to You" in the amount of $50,000 and "Medical Expenses" in the amount of $5,000. (Doc. 21-3 at 9-10) The Policy Declarations also provided coverage, under the heading, "Property Coverage" for "Business Income & Extra Expense," for a period of up to 12 months and "Personal Property Off-Premises" in the amount of $10,000."[2]  *Id.*

As to the "Property Coverage," the policy required Midvale to "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (JSF 7; Doc. 20-4 at 11) The Policy stated in relevant part that Covered

---

[1] Defendants filed a document entitled "Joint Separate Statement of Undisputed Facts" (Doc. 19-3) as well as a "Defendants' Separate Statement" (Doc. 19-2). Despite the title indicating the parties were filing a "joint" statement, there is no indication that Plaintiffs participated in the preparation of the document. Plaintiffs' counsel reports that while the parties met and conferred prior to the filing of the motion, Defendants did not provide Plaintiffs with the "joint" statement. (Doc. 21-2 at 2, Marderosian Decl. ¶ 6)

Defendants are reminded of the Court's order concerning the filing of a motion for summary judgment, which directed: "The moving party **SHALL** initiate the meeting and **SHALL** provide a complete, proposed statement of undisputed facts **at least five days** before the conference. The finalized joint statement of undisputed facts **SHALL** include all facts that the parties agree, for purposes of the motion, may be deemed true." (Doc. 16 at 4, emphasis in original). The Court does not condone Defendants' failure to comply with the terms of this order. Nevertheless, Plaintiffs do not oppose the motion—or the facts presented in the statement—on these grounds.

The Court has reviewed the "Joint Separate Statement of Undisputed Facts" and any fact deemed undisputed by the evidence presented by both parties is identified as "JSF." Any facts included in "Defendants' Separate Statement (Doc. 19-2) that were either admitted by Plaintiffs or not disputed by the evidence are identified as "DUF." Plaintiffs' facts that are undisputed by the evidence are identified as "PUF."

[2] There was also "Other Coverage" for various items, not at issue in this case.  *Id.*

2

Property includes "Buildings as described under Paragraph **a**. [and] Business Personal Property as described under Paragraph **b**. below, or both…" (Doc. 20-4 at 11, emphasis in original) The Policy defines these terms in relevant part as:

    a. Buildings, meaning the buildings and structures at the premises described in the Declarations, including:
        (1) Completed additions;
        (2) Fixtures, including outdoor fixtures;
        (3) Permanently installed:
            (a) Machinery; and
            (b) Equipment;
   . . .
    b. Business Personal Property located in or on the buildings or structures at the described premises or in the open (or in a vehicle) within 100 feet of the buildings or structures or within 100 feet of the premises described in the Declarations, whichever distance is greater, including:
        (1) Property you own that is used in your business;
        (2) Property of others that is in your care, custody or control, except as otherwise Provided…

(Doc. 20-4 at 11; *see also* JSF 8-9)

The Policy also provided coverage for loss of business income. (JSF 12) Specifically, the Policy stated in relevant part:

We will pay for the actual Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 20-4 at 16; *see also* JSF 12) According to the Policy, "operations" included the insured's "business activities occurring at the described premises." (JSF 13; Doc. 20-4 at 43) "Period of restoration" includes, "the period of time that:

    (1) Begins:
        (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
        (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
        caused by or resulting from any Covered Cause of Loss at the described premises; and

    (2) Ends on the earlier of:
        (a) The date when the property at the described business should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
        (b) The date when business is resumed at a new permanent location."

(JSF 14; Doc. 20-4 at 43-44)

On February 10, 2017, the Tools N Thangs store was burglarized, and the theft was captured on a surveillance video. (JSF 15; PUF 11) "Suspects cut the padlock off the rear security door and kicked in the pedestrian door to gain entry." (PUF 10) Multiple items were stolen from Tools N Thangs, "including a computer which contained all of the Plaintiffs' personal and business files," several pieces of jewelry, an electric guitar, video game consoles, and other electronic devices. (*Id.*) Ms. Brulee also reports that "there was significant property damage caused to the premises." (*Id.*; Doc. 21-3 at 2, Brulee Decl. ¶ 6)

Ms. Brulee was unaware of the theft until February 14, 2017. (PUF 12) "Upon discovering what had occurred, Ms. Brulee contacted the police and filed a police report which included a list of the items that had been taken." (*Id.*)

On February 16, 2017, Ms. Brulee reported the loss to Midvale Indemnity Company. (PUF 13; Doc. 21-2 at 10) Midvale's file notes indicate that "[g]lass mirrors were damaged, multiple cameras were taken down, the main computer was stolen, and merchandise was stolen." (PUF 14; Doc. 21-2 at 10) In addition, Midvale noted that the "door was knocked down, and [the] lock was broken." (*Id.*) On March 3, 2017, the insurance claim was "assigned … to an independent adjuster, Paul Haggerty, for 'physical inspection due to the reported extent and questionable nature of the loss.'" (PUF 15)

Tools N Thangs was the subject of an attempted burglary on March 21, 2017. (PUF 16) This burglary attempt "resulted in further damage to the rear door." (*Id.*; Doc. 21-3 at 2, Brulee Decl. ¶ 10)

On May 4, 2017, "Midvale and its third party administrator, Gallagher Bassett, sent Ms. Brulee a contents inventory form for Ms. Brulee to identify the items stolen." (PUF 18) Ms. Brulee informed Midvale that "all her data about all of her merchandise was inputted in her laptop computer," which was stolen. (Doc. 21-2 at 12) She submitted an itemized list of the items stolen, but did not provide proof of loss. (PUF 18-19; Doc. 21-3 at 3, Brulee Decl. ¶¶ 12-13)

"On June 8, 2017, Defendant Gallagher Basset, with Midvale's approval, wrote to Plaintiffs advising that the claim was being denied." (PUF 20) Defendants indicated the denial was because Tools N Thangs was "unable to produce adequate documentation regarding [the] ownership or possession of said items claimed stolen." (*Id.*) Ms. Brulee reports, "There was never any effort to perform an examination under oath or otherwise work with [her] to resolve [the] claim even though the

documentation that the Defendants were demanding and been stolen and even though the burglary had been caught on video." (Doc. 21-3 at 3, Brulee Decl. ¶ 15)

Plaintiffs initiated this action by filing a complaint on October 24, 2017. (Doc. 2) Plaintiffs asserted the defendants were liable for the following causes of action: (1) breach of written contract, (2) breach of the duty of good faith and fair dealing, (3) intentional infliction of emotional distress, and (4) negligent infliction of emotional distress.[3] (*See generally* Doc. 2) On April 4, 2018, Midvale issued a letter indicating the company would be "issuing a check [to Tools N Thangs, Inc.] for $50,000 which represented the business personal property limits under the subject insurance policy." (PUF 22; *see also* Doc. 21-2 at 20) The payment was issued on April 18, 2018. (Doc. 20-1 at 2)

Defendants filed the motion for summary judgment now pending before the Court on June 11, 2018. (Doc. 19) At the time of the filing, Tools N Thangs was a suspended corporation. Tools N Thangs filed its Statement of Information and revived its corporate status on June 12, 2018. (Doc. 21-5 at 3) Plaintiffs filed their opposition to the motion on June 29, 2018 (Doc. 21), to which Defendants filed a reply on July 9, 2018 (Doc. 22).

## II.     Requests for Judicial Notice

Both parties request that the Court take judicial notice of documents submitted in support of their respective positions. (Doc. 20-5; Doc. 21-5) The Court may take judicial notice of a fact that "is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201.

### A.     Information from Official State Websites

Defendants request that the Court take judicial notice of (1) the Business Entity Detail for Tools N Thangs taken from the California Secretary of State's website, dated June 11, 2018 and (2) the Entity Status Letter for Tools N Thangs from the California Franchise Tax Board dated June 11, 2018. (Doc. 20-5 at 2) Similarly, Plaintiffs request that the Court take judicial notice of the Business Entity Detail taken from the California Secretary of State's website on June 28, 2018. (Doc. 21-5 at 1)

---

[3] Plaintiffs' complaint identified GEICO Insurance Agency, Inc. as a third defendant. (See Doc. 2) However, Plaintiff voluntarily dismissed the claims against GEICO on November 28, 2017. (Doc. 9) Accordingly, the defendants remaining in the action are Midvale Indemnity Company and Gallagher Bassett Services, Inc.

5

The official records of the State of California, as contained in the Secretary of State and Franchise Tax Board official websites, are sources whose accuracy cannot reasonably be questioned, and judicial notice may be taken of facts on a website of a government agency. *See O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (taking judicial notice of information on the website of a government agency); *United States ex rel. Dingle v. BioPort Corp*., 270 F.Supp.2d 968, 972 (W.D. Mis. 2003) ("government documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet"). Thus, the Court may take judicial notice of the Business Entity Details for Tools N Thangs, Inc., as well as the entity status published by the Franchise Tax Board. The parties' requests for judicial notice of the information on the official state websites are **GRANTED**.

**B.      Plaintiffs' Complaint**

Defendants request the Court take judicial notice of Plaintiffs' Complaint filed in this action on October 24, 2017. (Doc. 20-5 at 2) The records of court proceedings cannot reasonably be questioned, and judicial notice may be taken of the Court's record and docket. *Mullis v. United States Bank. Ct.*, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987); *Valerio v. Boise Cascade Corp*., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978), *aff'd*, 645 F.2d 699 (9th Cir. 1981); *see also Rodic v. Thistledown Racing Club, Inc*., 615 F.2d 736, 738 (6th. Cir. 1980). Thus, the Court may take judicial notice of its own files and documents filed in other courts.

However, the Court need not take judicial notice of prior filings submitted by parties in the same case. *See, e.g., Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist*., 935 F. Supp. 2d 968, 979 (E.D. Cal. 2013) (finding it unnecessary to take judicial notice of a prior order in the same case); *Ortega v. Univ. of the Pac.*, 2013 WL 6054447, at *3 (E.D. Cal. Nov. 15, 2013) (finding it unnecessary to take judicial notice of a complaint filed in the same case). Moreover, the Court is unable to take judicial notice of the factual allegations presented in the complaint. Therefore, Defendants' request that the Court take judicial notice of the complaint is **DENIED**.

*///*

### III.    Evidentiary Objections

The Ninth Circuit determined that at the summary judgment stage, "a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  Defendants object to several statements in the declarations of Sophia Brulee and JoAnna Moore. (*See* Doc. 22-1)

#### A.    Objections to the Declaration of Sophia Brulee

Ms. Brulee asserts, "Midvale still has not paid for the damage to the building by the robbers which cost approximately $1,100 to repair." (Doc. 21-3 at 3, Brulee Decl. ¶ 18) In addition, she reported that "Midvale still has not addressed the damage to the premises that they, themselves, noted and which is covered under the insurance policy." (*Id.*, ¶ 21) Defendants object to these statements on the grounds that they "lack[] foundation." (Doc. 22-1 at 2)

Pursuant to Rule 56(c) of the Federal Rules of the Civil Procedure, "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *See also Block*, 253 F.3d at 419 (9th Cir. 2001) (holding it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an affidavit based on inadmissible hearsay rather than the affiant's personal knowledge). The information set forth by Ms. Brulee is sufficient to determine that she is aware of the terms of the insurance policy because she "obtained [the] commercial insurance/business owner's policy from Midvale Indemnity Company" as the owner and operator of Tools N Thangs, Inc. (Doc. 21-3 at 1, ¶¶2, 4) In addition, she has personal knowledge of the payment made by Midvale, which indicated the check "represented the business personal property limits under the subject insurance policy," not damage to the premises. (*Id.* at 3, ¶16) On the other hand, she fails to demonstrate how she knows the approximate cost to repair the damage to the building. Accordingly, Defendants objections as to lack of foundation are **OVERRULED** as to the information related to the policy and whether the corporation has received payment and **SUSTAINED** as to the cost of the building repair.

*///*

## B. Objections to the Declaration of JoAnna Moore

Defendants object to the declaration of JoAnna Moore, who was retained by Plaintiffs as an expert in this action. (*See* Doc. 21-4 at 1, Moore Decl. ¶ 1; Doc. 22-1 at 3)

### 1. Relevance

Defendants object to the declaration of Joanna Moore, an expert, as irrelevant. (Doc. 22-1 at 3) According to Defendants, "Plaintiffs do not cite to or rely on the Declaration of Ms. Moore in response to any of the undisputed material facts set forth in Defendants' Separate Statement" and "the Declaration is not relevant to any of the matters presented before the Court." (*Id.*) Therefore, Defendants object to the entirety of the declaration and to specific statements made by Ms. Moore as irrelevant. (*Id.* at 3-9)

Previously, this Court observed that "attorneys routinely raise every objection imaginable without regard to whether the objections are necessary, or even useful, given the nature of summary judgment motions in general, and the facts of their cases in particular." *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp.2d 1110, 1119 (E.D. Cal. 2006). Objections on the grounds of relevance are inappropriate, because the Court must determine whether a fact is relevant and material as part of "the summary judgment standard itself." *See id.* Therefore, Defendants' objections on these grounds are **OVERRULED**. The Court will only consider relevant evidence as a matter of course.

### 2. Improper expert opinions

Under the Federal Rules, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Expert testimony may be admissible at the summary judgment stage even if "not based on firsthand knowledge or observation." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 591 (1993). However, "an expert witness cannot give an opinion as to [a] legal conclusion, i.e., an opinion on an ultimate issue of law." *Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008); *see also Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) ("Expert testimony is not proper for issues of law.... They do not testify about the law.")

Importantly, "the interpretation of contract language is a question of law." *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925-26 (9th Cir. 2003). Thus, it is an issue "upon which the opinion of an expert may not be given." *PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 291 Fed. App'x. 40, 41 (9th Cir. 2008) (rejecting expert testimony that "went to the interpretation of the underlying settlement agreement, a contract"); *see also Nationwide Transp. Fin.*, 523 F.3d at 1058. Consequently, to the extent Ms. Moore offers any opinions on the interpretation of the terms of the insurance contract and the obligations of the parties, Defendants' objections are **SUSTAINED**.

### C.    Conclusion

Where statements offered by either party are speculative or represent a legal conclusion, the Court, as a matter of course, will not factor that material into the analysis. *See Burch*, 433 F. Supp.2d at 1119 ("[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not *facts* and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context.") (citation omitted, emphasis in original). Rather, the Court's analysis relies on evidence it deems admissible.

### IV.    Legal Standards for Summary Judgment

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

Summary judgment, or summary adjudication, should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the "initial responsibility" of demonstrating the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). A party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). Further, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley,* 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of

the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

**V.      Discussion and Analysis**

Defendants seek summary adjudication on the claims presented by Sophia Brulee, asserting she is unable to recover damages in this action. (Doc. 19 at 10) In addition, Defendants contend Plaintiffs' claim against Gallagher Bassett Services should be dismissed. (*Id.* at 12) Finally, Defendants note that Tools N Thangs, Inc. ("TNTI") was a suspended corporation and lacked standing to sue. (*Id.* at 13) Defendants also contend the breach of contract claim fails because no insurance benefits are owed to Plaintiffs. (*Id.* at 13-14)

**A.      Claims of Sophia Brulee**

In the Complaint, Ms. Brulee and Tools N Thangs asserted Defendants were liable for breach of contract and breach of the good faith and fair dealing for the first and second causes of action. (Doc. 2 at 4-7) In addition, the third and fourth cause of action were raised by Ms. Brulee alone, for intentional infliction of emotional distress and negligent infliction of emotional distress. (*Id.* at 8-9)

Seeking summary adjudication of Ms. Brulee's claims, Defendants contend that she "cannot sue Defendants for breach of contract or breach of the implied covenant" because she "is not a named insured" on the contract. (Doc. 19 at 10) Defendants argue, "Because Ms. Brulee did not enter into a contract with Midvale, only the corporation TNTI did, she cannot pursue a breach of contract or breach of the implied covenant cause of action against Defendants." (*Id.*, citing *Seretti v. Superior Nat. Ins. Co.*, 71 Cal.App.4th 920, 929 (1999)) Defendants also argue that "Ms. Brulee cannot recover on her causes of action for intentional and negligent infliction of emotional distress," because she did not have a pre-existing contractual relationship with Defendants and "[n]o California case has allowed recovery for emotional distress arising solely out of property damage, absent a threshold showing of some preexisting relationship or intentional tort." (Doc. 19 at 11, quoting *Cooper v. Superior Court*, 153 Cal.App.3d 1008, 1012 (1984)) Further, Defendants note that Ms. Brulee did not claim that she suffered "physical trauma" following outrageous conduct by the defendants, as is required for a claim for emotional distress. (*Id.* at 12, citing *Fuentes v. Perez*, 66 Cal.App.3d 163, 170 (1977)).

In response to the motion, Plaintiffs assert they "do not oppose the Defendants [sic] motion as it

to pertains to the dismissal of Sophia Brulee as an individually named plaintiff [and] Ms. Brulee's emotional distress claims." (Doc. 21 at 4)

Accordingly, Defendants' motion is **GRANTED** as to Ms. Brulee's claims arising under the first and second causes of action, for breach of contract and breach of the duty of good faith and fair dealing. In addition, Defendants' request for summary adjudication of the third and fourth causes of action— for intentional infliction of emotional distress and negligent infliction of emotional distress— is **GRANTED**.

### B.    Claims against Gallagher Bassett Services

Plaintiffs alleged Gallagher Bassett Services was liable for a breaching a contract and the duty of good faith and fair dealing. (Doc. 2 at 4-7) Defendants contend all claims against Gallagher Bassett Services should be dismissed because "it is not a party to the contract," and "privity of contract is needed to pursue these causes of action." (Doc. 19 at 12, citing *Seretti*, 71 Cal.App.4th at 929) Defendants observe also that, under California law, where "non-insurer defendants were not parties to the agreement for insurance… they are not, as such, subject to an implied duty of good faith and fair dealing." (*Id.*, quoting *Filippo Industries, Inc. v. Sun Ins. Co.*, 74 Cal.App.4th 1429, 1442-43 (1999))

In response to the motion, Plaintiffs report they "do not oppose … the dismissal of third party claims administrator, Gallagher Bassett." (Doc. 21 at 4) Therefore, Defendants' motion for summary adjudication of the claims against Gallagher Bassett Services is **GRANTED**.

### C.    Standing of Tools N Thangs, Inc.

Defendants asserted that Tools N Thangs was "a suspended corporation," which "may not prosecute or defend an action." (Doc. 19 at 13, citing *Timberline, Inc. v. Jaisinghani*, 54 Cal.App.4th 1361, 1356-66 (1997)) As Defendants observed, at the time the motion was filed, Tools N Thangs had a "suspended" status, and was "not in good standing with the Franchise Tax Board." (Doc. 20-6 at 2; Doc. 20-7)

"The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." *United States v. 2.61 Acres of Land*, 791 F.2d 666, 668 (9th Cir. 1985) (quoting Fed. R. Civ. P. 17(b)). Because Tools N Thangs is a California corporation, the Court must apply California law to determine whether Tools N Thangs may bring the claims in this action. *See id.* As the Ninth

Circuit observed, "It is well-settled that a delinquent corporation may not bring suit and may not defend a legal action." *Id.* (citing *Reed v. Norman*, 48 Cal.2d 338, 343 (1957)). However, "a revived corporation may proceed with an action regardless of when revival occurred." *2.61 Acres of Land*, 791 F.2d at 670 (citing *Peacock Hill Assoc. v. Peacock Lagoon Constr. Co.*, 8 Cal. 3d 369, 371 (1972)). Consequently, the suspension of corporate powers may only be asserted as a defense only "so long as the party-corporation is under disability. Upon revival of its corporate powers … the party may proceed with the prosecution" of an action. *Id.* (quoting *Diverco Constructors, Inc. v. Wilstein*, 4 Cal.App.3d 6, 12-13 (1970)).

Following the filing of Defendants' motion for summary judgment, Tools N Thangs revived its corporate status. (Doc. 21-5 at 3) The California Secretary of State now recognizes that Tools N Thangs is an "active" entity. (*Id.*) Thus, Tools N Thangs may prosecute its claims in this action. *See 2.61 Acres of Land*, 791 F.2d at 670; 4 Cal.App.3d at 12-13. The motion for summary adjudication based upon Tools N Thangs' lack of standing is **DENIED**.

### D.      Claim for Breach of Contract

Plaintiffs assert Midvale "breached the terms of and provisions of [the] contract to provide coverage for the contents of the store and damage to it, by unreasonably delaying and/or failing to provide benefits the Plaintiffs were entitled to under the policy." (Doc. 2 at 5, ¶ 26) Accordingly, they alleged Midvale is liable for a breach of contract. (*Id.* at 4-5)

A claim of breach of contract arises under state law, and requires a plaintiff to demonstrate (1) the existence of a contract[4], (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants, and (4) resulting damages. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. App'x 661, 662 (9th Cir. 2009) (citing *First Comm. Mort. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001)); *see also Haberbush v. Clark Oil Trading Co.*, 33 Fed. App'x 896, 898 (9th Cir. 2002) (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages" as elements to a breach of contract).

There is no dispute concerning the existence of the Policy obtained by Ms. Brulee from

---

[4] Pursuant to California contract law, the elements for a viable contract are "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999) (citing Cal. Civ. Code § 1550; *Marshall & Co. v. Weisel*, 242 Cal. App. 2d 191, 196 (1966)).

Midvale, for which Tools N Thangs was the named insured. (JSF 1-2) However, the parties disagree regarding whether Plaintiff satisfied all requirements of the contract. In addition, the parties dispute whether Midvale breached terms of the insurance contract for coverage of business personal property, the loss of business income suffered by Tools N Thangs, and the damage caused to the store property.

### 1.     Business Personal Property

The Policy indicated that Midvale "would pay for direct physical loss of or damage to Covered Property at the premises," including property owned by the insured and used in its business and the property of others that was in its "care, custody, or control." (Doc. 20-4 at 11; *see also* JSF 8-9) The Policy had a $50,000.00 limit for Business Personal Property. (JSF 10; Doc. 20-4) On June 8, 2017, Tools N Thangs' claim was denied for failure "to produce adequate documentation regarding [the] ownership or possession of said items claimed stolen." (PUF 20) However, on April 18, 2018—after Plaintiff initiated this action—Midvale issued a payment in the amount of $50,000 to Tools N Thangs, paying the Policy limit for the business personal property loss. (PUF 22; *see also* Doc. 20-1 at 2; Doc. 21-2 at 20)

Because Midvale paid the policy limit, Midvale contends "the breach of contract claim is now moot." (Doc. 19 at 13) Plaintiffs do not dispute that the Policy terms related to the business personal property loss have been satisfied. (*See* Doc. 21 at 11) Accordingly, to the extent the first cause of action is based upon failure to pay for the business personal property loss, Defendants' motion for summary adjudication is **GRANTED**.

### 2.     Loss of Business Income

Plaintiffs argue the payment "[did] not extinguish the Plaintiffs' claim for breach of contract … [because] Defendants still have not paid the Plaintiffs for … the loss of business income as a result of the suspension of operations." (Doc. 21 at 11) On the other hand, Defendants argue that "TNTI is not entitled to loss of business income in this case." (Doc. 19 at 13)

The Policy states in relevant part:

> We will pay for the actual Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 20-4 at 16; *see also* JSF 12) The term "period of restoration" is defined as: "[T]he period of time that:

> (1) Begins:
>     (a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or
>     (b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;
> caused by or resulting from any Covered Cause of Loss at the described premises; and
>
> (2) Ends on the earlier of:
>     (a) The date when the property at the described business should be repaired, rebuilt or replaced with reasonable speed and similar quality; or
>     (b) The date when business is resumed at a new permanent location."

(JSF 14; Doc. 20-4 at 43-44)

> *a.*      *Suspension of operations and the 72-hour period*

As Defendants observe, under California law, a "suspension" indicates a cessation of operations, not "a slowdown or reduction in operations." (Doc. 19 at 14, quoting *Buxbaum v. Aetna Life & Cas. Co.*, 103 Cal.App.4th 434, 443-444 (2002)). Defendants argue that "TNTI never suspended its operations, but continued to operate following the theft and did not have a 'period of restoration.'" (Doc. 19 at 13) In support of this assertion, Defendants refer to "Tools N Thangs, Inc.'s Wells Fargo bank statements for February 2017, March 2017 and April 2017," which were produced by Plaintiffs during the course of discovery. (Doc. 19-2 at 4; *see also* Doc. 20-2 at 4-7) Defendants observe that "TNTI's deposits increased in the month of the loss compared to other months." (Doc. 19 at 13)

Plaintiffs contend, "Defendants never conducted an examination under oath and never deposed the Plaintiff to determine whether or not the operations were suspended." (Doc. 21 at 13) Plaintiffs argue the bank statements "do not provide any detail whatsoever as to whether or not the operations of Tools N Thangs were suspended. At best, the bank statements simply reflect the bank balance for Tools N Thangs at the close of each month." (*Id.*) Further, Ms. Brulee reports that she "was unable to keep [her] business open most of the time" following the robbery. (Doc. 21-3 at 3, Brulee Decl. ¶ 19) Ms. Brulee asserts that "Tools N Thangs was closed for three months following the incident," which she believes "resulted in a loss of business income of $15,000-$20,000." (*Id.*)

In response, Defendants assert that even if the business operations were suspended, there was not a "Period of Restoration," as required for a payment under the Policy. (Doc. 22 at 3-4) According to Defendants, "absent a 'Period of Restoration' there is no coverage for loss of business income, regardless of whether Plaintiffs chose to suspended operations or not." (*Id.* at 4) Defendants observe:

> For example, in *Winters v. State Farm Fire & Casualty Co.*, 73 F.3d 224 (9th Cir. 1995), there was no coverage for loss of business income following a theft claim. In so finding, the court noted that, as here, the policy only provided coverage for loss of business income during a "Period of Restoration." Certain tools were stolen and the insured business, a law firm, did not suspend operations nor did a "Period of Restoration" occur.

(Doc. 22 at 4) Further, Defendants argue that it should not have taken "a period longer than 72 hours" to restore operations. (*Id.*)

Under the terms of the Policy, "operations" include only the "business activities occurring *at the described premises.*" (JSF 13; Doc. 20-4 at 43) (emphasis added). Thus, the Court must determine whether Tools N Thangs suspended its operations at the insured location. For example, in *Buxbaum*, the California court noted a law firm had two locations, one of which suffered water damage from a broken water pipe. *Buxbaum*, 103 Cal.App.4th at 437. To determine whether the operations were suspended within the meaning of the insurance policy in issue, the court considered only the activity at the damaged property, not the other location. Because attorneys at the flooded location continued working, though with reduced hours, the court found the firm "did not 'suspend operations'" as required by its insurance policy. *Id.* at 439, 441. In contrast, here, Ms. Brulee asserts the store "was closed for three months following the incident." (Doc. 21-3 at 3, Brulee Decl. ¶ 19) Although Defendants point to the bank statements for Tools N Thangs to show the operations continued, there is no evidence that the money deposited came from the location insured by the Policy. The Court cannot assume, as Defendants would have it, that the money coming in was from the store operating at the insured premises. *See Orr* 285 F.3d at 772.

Defendants also fail to address the fact that the burglary occurred on February 10 and was not discovered until February 14, 2017—more than 72 hours after the event. The Policy clearly indicates that the "Period of Restoration" begins to run immediately after the loss, not from the date of discovery of the loss. (*See* JSF 14; Doc. 20-4 at 43-44) Thus, the repairs at Tools N Thangs could not have been completed within the 72 hours contemplated by the Policy.

The parties disagree about the extent of the damage and the time necessary to repair it. Defendants contend the damage was "limited to cutting a lock off the security door and kicking in a pedestrian door." (Doc. 22 at 4) However, Ms. Brulee reports that not only was the padlock cut and the door kicked in, but the thieves also "ransacked the business" and "there was significant property damage caused to the premises." (Doc. 21-3 at 2, Brulee Decl. ¶ 6) Though the Court questions whether this damage would take three months to repair, it cannot say as a matter of law how quickly the repairs should have been completed.[5]

This Court previously determined: "While the interpretation of policy language is a legal issue under California law, what constitutes a reasonable period to carry out the necessary repairs and resume business for purposes of the period of restoration is a question for the jury." *Fresno Rock Taco, LLC v. Nat'l Sur. Ins. Corp.*, 2015 WL 135720, at *22 (E.D. Cal. Jan. 9, 2015) (citing *Michel Family Trust v. Travelers Indem. Co. of Conn.*, 2011 WL 207955, at *5 (N.D. Cal. Jan. 21, 2011) [finding a factual dispute regarding the length of the Period of Restoration was an issue for the jury that could not be resolved on summary judgment]). Thus, both the extent of the damage done to the property and the reasonableness of the time for the repairs to be completed are questions for a jury to determine.

c.   *Conclusion*

Because Defendants have not met the burden to show an absence of a genuine issue of material fact concerning the suspension of operations, the extent of the damage and the time necessary for the repairs, summary adjudication of the claim for failure to pay for the loss of income is not appropriate. *See, e.g., Fresno Rock Taco*, 2015 WL 135720, at *22; *T.W. Electrical Serv., Inc.*, 809 F.2d at 630. Accordingly, summary adjudication of the first cause of action for breach of contract as to the loss of business income, is **DENIED**.

///

---

[5] Ms. Brulee's declaration fails to document why the business was not reopened until May, why it was only "partially open," or why it was open only on certain days and with restricted hours. Likewise, she has chosen not to explain the source of the corporation's earnings during the time the store was closed. However, absent affirmative evidence presented by the defense that the store was the only source of income for the corporation, she was not required to provide these explanations.

3.      Property Damages

Plaintiffs allege Midvale is liable for breach of contract, in part, for failure "to provide coverage for the … damage to [the store], by unreasonably delaying and/or failing to provide benefits the Plaintiffs were entitled to under the policy." (Doc. 2 at 5, ¶ 26) Specifically, Plaintiffs contend the "insurance policy provided coverage in the amount of $50,000 for "Damage to Premises Rented To You." (Doc. 21 at 11) Plaintiffs observe this "issue … was completely ignored by the Defendants in their motion." (*Id.*)

In response, Defendants contend, "Not only is there no coverage under the policy provision invoked by Plaintiffs, but even more even more problematic for Plaintiffs, no claim for any such expenses has ever been raised until Plaintiffs' Opposition. No claim for damage to the premises is included in Plaintiffs' Sworn Proof of Loss." (*Id.* at 3, citing Doc. 22-3)

### a.      Whether Plaintiffs raised the claim

Despite Defendants' assertion that no claim for property damages was made until the filing of Plaintiffs' opposition, the evidence shows that Ms. Brulee informed Midvale of the property damage because Midvale's file notes indicate she reported: "[g]lass mirrors were damaged, multiple cameras were taken down, the main computer was stolen, and merchandise was stolen." (PUF 14; Doc. 21-2 at 10) In addition, on February 16, 2017, Midvale noted that the "door was knocked down, and [the] lock was broken." (*Id.*)

Further, as noted above, the first cause of action in the complaint indicated Defendants had not paid for the property damage. (Doc. 2 at 5, ¶ 26) Plaintiffs' prayer for relief also includes a request for "[e]conomic damages incurred as a result of the damage to the premises." (*Id.* at 9) Thus, this is not a new claim in the action, and Plaintiffs are not attempting to improperly raise a new claim to defeat summary judgment. *See Wasco Prods. v. Southwall Techs, Inc.,* 435 F.3d 989, 992 (9th Cir. 2006).

### b.      Coverage in the Policy

Plaintiffs contend that under the terms of the Policy, Midvale indicates that it would "pay for direct physical loss of or damage to Covered Property," and the term "Covered Property" includes "Buildings." (JSF 7-9; Doc. 20-4 at 11) On the other hand, Defendants contend the provision

governing "Damages to Premises Rented To You" "applies to liability claims[6], not theft claims." (Doc. 22 at 3) Defendants argue that "the limit Plaintiffs seek to invoke is for Liability Coverage, which protects Plaintiffs from liability for damage done by them to the leased premises." (*Id.*, citing Doc. 21-3 at 9, 62) Thus, the parties disagree regarding the terms of the Policy and the scope of the coverage provided to Tools N Thangs.

Under California law, the interpretation of an insurance policy is a question of law. *Atel Financial Corp.*, 321 F.3d at 925-26; *see also Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18, (1995). It is the insured's burden to prove a claim is within the scope of a policy. *Royal Globe Ins. Co. v. Whitaker*, 181 Cal.App.3d 532, 537 (1986). However, the insurer bears the burden of demonstrating that a claim falls within a purported exclusion from coverage. *Id.*; *see also Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 280 (1966).

The Court must first look at the language of a policy "to ascertain its plain meaning or the meaning a layperson would ordinarily attach to it." *Waller*, 11 Cal.4th at 18. "If the meaning a layperson would ascribe to contract language is not ambiguous," the Court must apply that meaning. *AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 822 (1990). Policy language must be viewed and interpreted in the context of the contract as a whole. *Powerine Oil Co., Inc. v. Superior Court*, 37 Cal.4th 377, 391 (2005). "Where a contract is partly written or printed under the special direction of the parties, and the remainder is copied from a form prepared without reference to the particular contract in question, the parts which are original control those which are not." *Fid. & Deposit Co. of Maryland v. Charter Oak Fire Ins*. Co., 66 Cal. App. 4th 1080, 1087 (1998) (citing Cal. Civ. Code § 1651). Thus, for example, "[w]hen information in the [policy] declarations conflicts with general information in the preprinted forms, the former prevails over the latter." *Id.*

As Defendants observed, there is no coverage for building property damage indicated on the "Policy Declarations" page of the Policy. (Doc. 20-4 at 3; Doc. 21-3 at 9) The pre-printed form of the Policy indicated that "Covered Property" includes "Buildings as described under Paragraph **a**. …" (Doc. 20-4 at 11, emphasis in original) The Policy defines "Buildings" as:

---

[6] Plaintiffs' expert also describes this coverage as, "a $50,000 **liability** limit for Damage to Premises Rented to You." (Doc. 21-4 at 8, emphasis added)

[T]he buildings and structures at the premises **described in the Declarations**, including:
    (1) Completed additions;
    (2) Fixtures, including outdoor fixtures;
    (3) Permanently installed:
        (a) Machinery; and
        (b) Equipment;
. . .

(Doc. 20-4 at 11; *see also* JSF 8-9) (emphasis added). However, no "buildings" are identified on the Policy Declarations page, which was customized for the terms of coverage for Plaintiffs. (Doc. 20-4 at 3-4; Doc. 21-3 at 9-10)

One court determined a plaintiff did not purchase "Buildings" coverage when considering similar terms in a pre-printed insurance form and a policy declaration page. *See Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 183 Md. App. 710, 726-27 (2009). The court observed that the "Businessowner's Special Property Coverage Form" provided in relevant part that Nationwide would "pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.* at 725. "Covered Property" included business personal property and "[b]uildings, meaning the buildings and structures at the premises described in the Declarations." *Id.* Referring to the declarations page setting the terms of coverage between Nationwide and Regency, the court concluded: "Because the Declarations do not contain Limits of Insurance for 'Buildings' coverage, no such coverage was purchased by Regency, and therefore it has no such coverage." *Id.* at 728.

In TNTI's policy, the declarations page lists coverage for "Damage to Premises Rented to You," under the heading, "General Liability.[7]" (Doc. 20-4 at 3-4; Doc. 21-3 at 9-10) There is nothing similar under the headings, "Property Coverage" or "Other Coverage." Thus, it is apparent that the coverage extends to the premises rented by TNTI *only* if liability for the damage could be imputed to the corporation. Consequently, the Court finds the Plaintiffs did not purchase coverage for the rented real property.

///

_____

[7] Even if the Court considered the "Business Liability Coverage" provision of the Declarations to apply here, the Policy specifically excludes "'any costs or expenses incurred by you … for **repair**, replacement, enhancement, restoration or maintenance of such property **for any reason**…" (Doc. 21-3 at 57, emphasis added) Thus, it appears any repairs performed by Plaintiff to the property that were the obligation of the landlord, are excluded from coverage.

### c. *Plaintiff's Damages*

Even if the Court found Plaintiffs obtained coverage for the property damage under the Policy, Plaintiffs fail to meet their burden to identify damages for this breach. California law requires a showing of "appreciable and actual damage" to succeed on a breach of contract claim. *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000). Thus, nominal damages and speculative harm do not suffice. *Ruiz v. Gap, Inc.*, 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009). Notably, Plaintiffs fail to identify evidence that Tools N Thangs—as opposed to the landlord—paid for the repairs to the building. Rather, Ms. Brulee's declaration states only the approximate cost for the repair. (Doc. 21-3 at 3) It is also noteworthy, that the Plaintiff's Rule 26 disclosure did not identify any record documenting the cost of repair to support their claim. (Doc. 22-1 at 3-4) Consequently, Plaintiffs have failed to counter the evidence submitted by the defendant demonstrating the contract did not require Midvale to cover the cost of repair of the property damage. Therefore, summary adjudication is appropriate. *Celotex*, 477 U.S. at 323.

## VI.    Conclusion and Order

Defendants have established that Sophia Brulee is unable to succeed on her claims, as Plaintiffs acknowledge. In addition, Defendants established that the claims against Gallagher Bassett Services, Inc. may not proceed and Plaintiffs have not opposed the dismissal of these claims. However, Defendants have not demonstrated an absence of a genuine issue of material fact related to Tools N Thangs' claim for breach of contract against Midvale Indemnity Company for loss of business income. *See Celotex,* 477 U.S. at 323. A jury must make credibility determinations and resolve the conflicts between the evidence. *See T.W. Electrical Serv., Inc.*, 809 F.2d at 630. Based upon the foregoing, the Court **ORDERS**:

1.    Summary adjudication of the first and second causes of action, to the extent they are brought by Sophia Brulee, is **GRANTED**;

2.    Summary adjudication of the first cause of action, to the extent it is brought by Tools N Thangs, Inc. and to the extent it relates to a breach of contract for failure to pay for loss of business income is **DENIED** and **GRANTED** as to property damage and loss of business personal property; and

3.     Summary adjudication of the third and fourth causes of action is **GRANTED.**

IT IS SO ORDERED.

Dated:   **July 19, 2018**                          **/s/ Jennifer L. Thurston**
                                              UNITED STATES MAGISTRATE JUDGE